Alexander J. Lindvall (#034745)
CITY OF MESA ATTORNEY'S OFFICE
P.O. Box 1466
Mesa, Arizona 85211
(480) 644-2343
mesacityattorney@mesaaz.gov

Attorneys for Defendants
Jacob Alexander & Brandon Grissom

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Dejuan M. Hopson,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>J. Alexander et al.,<br><br>　　　　　　Defendants. | Case No. 2:20-cv-00128-SMB-DMF<br><br>**Motion for Summary Judgment on Behalf of Defendants Alexander and Grissom**<br><br>(Oral Argument Requested) |

　　　　This is a Fourth Amendment § 1983 case brought by a prisoner. The plaintiff claims the defendants searched and seized him without adequate suspicion and that they used excessive force in doing so. The facts of this case, however, do not show a Fourth Amendment violation. The plaintiff does not allege that the defendants used any appreciable physical force, and he does not allege any sort of physical injuries. And the defendants maintain that they never pointed, or threatened to point, their weapons at the plaintiff. The facts of this case show a routine traffic stop without any sort of physical altercation.

　　　　But even if you assume the worst—that the defendants pointed their firearms at the plaintiff during this encounter—the plaintiff's excessive-force claim still fails because the defendants reasonably (and correctly) believed the plaintiff was armed and committing a crime when they approached his vehicle. The Ninth Circuit has repeatedly held that officers may draw their firearms during a traffic stop if they reasonably believe the suspect might be armed, and the available caselaw strongly favors the defendants. The defendants also had the requisite suspicion to stop and search the plaintiff, as the plaintiff's and his associate's actions would have led a reasonable officer to believe that criminal activity was afoot, and the odor of marijuana coming

from the plaintiff's vehicle gave the officers probable cause to search his vehicle. Because the defendants acted reasonably at all times during their encounter with the plaintiff, their conduct fell within the bounds of the Fourth Amendment.

Additionally, even if this Court finds that the defendants' conduct somehow violated the Fourth Amendment, existing caselaw had not placed the unconstitutionality of the defendants' conduct "beyond debate," meaning a reasonable police officer would not recognize the defendants' conduct as unconstitutional. As such, the defendants are, at a minimum, entitled to qualified immunity and summary judgment in their favor.

A.   **FACTUAL BACKGROUND**

On January 25, 2018, at approximately 4:00 p.m., Detective Jacob Alexander pulled into the parking lot of a Circle K gas station to buy a drink. [SOF ¶ 1.] A few minutes later, while sitting in his unmarked police vehicle, Detective Alexander saw a man, later identified as Tommy Jones, pull into the gas station parking lot. [SOF ¶ 2.] Detective Alexander observed Jones acting suspiciously. [SOF ¶ 2.]

Detective Alexander observed Jones reverse his vehicle into the parking spot furthest from the gas station's doors. [SOF ¶ 3.] Detective Alexander observed Jones nervously looking around the gas station. [SOF ¶ 4.] Jones was craning his neck inside the vehicle to look around the gas station and the parking lot. [SOF ¶ 5.] Jones moved his vehicle to several different parking spots, backing in his vehicle each time. [SOF ¶ 6.] Each time Jones pulled into a new spot, he turned his body 180 degrees in the vehicle to get a good look at his surroundings. [SOF ¶ 6.] In his police report, Detective Alexander stated that "Jones appeared to be abnormally nervous," as he was constantly "peer[ing] back and forth through the parking lot and look[ing] over his shoulder after parking multiple times." [SOF ¶ 7.]

Jones continued this activity for approximately 10 to 15 minutes, constantly scanning the parking lot and the gas station with his eyes. [SOF ¶ 8.] Based on his training and experience, Detective Alexander came to believe that Jones was "casing" the gas station for a robbery. [SOF ¶ 9.] The fact that Jones moved his vehicle several times led Detective Alexander to believe he was looking for witnesses, police officers, security cameras, etc. [SOF ¶ 9(a).] The fact that Jones

was constantly looking at his surroundings led Detective Alexander to believe he was trying to gather as much information as possible about his surroundings—which is not typical for someone who is merely visiting a gas station. [SOF ¶ 9(b).] The fact that Jones always backed his vehicle into the parking spots led Detective Alexander to believe Jones was positioning his vehicle for a speedy getaway and/or attempting to obscure his license plate. [SOF ¶ 9(c).] And the fact that Jones remained in his vehicle for approximately 15 minutes led Detective Alexander to believe that Jones had no intention of making a purchase at the gas station. [SOF ¶ 9(d).]

Jones's actions led Detective Alexander to suspect that an armed robbery was about to occur. [SOF ¶ 10.] After about 15 minutes of this activity, Detective Alexander observed another vehicle driven by the plaintiff, Dejuan Hopson, enter the parking lot. [SOF ¶ 11.] Hopson parked his vehicle in the parking space next to Jones's vehicle. [SOF ¶ 12.] Jones then exited his vehicle and got into the front passenger seat of Hopson's vehicle. [SOF ¶ 13.] Detective Alexander saw the two men conversing and exchanging items between one another. [SOF ¶ 14.] A few moments later, Jones exited Hopson's vehicle, got something out of his car, and returned to Hopson's vehicle. [SOF ¶ 15.]

Based on his training and experience, Detective Alexander believed Jones and Hopson were likely engaging in criminal activity. [SOF ¶ 16.] Knowing that traffic stops are especially dangerous, Detective Alexander called for backup. [SOF ¶ 17.] Detective Brandon Grissom arrived a few minutes later and parked his squad car behind Hopson's vehicle. [SOF ¶ 18.]

Detective Alexander then approached the driver's side of Hopson's vehicle and knocked on the window. [SOF ¶ 19.] Hopson rolled down his window, and both Detective Alexander and Detective Grissom immediately smelled the odor of marijuana coming from the vehicle. [SOF ¶ 20.] When Detective Alexander asked about the smell of marijuana, Hopson told him that he smoked marijuana before driving but that he was an Arizona Medical Marijuana Act (AMMA) cardholder. [SOF ¶ 21.] Hopson, however, was unable to produce an AMMA card upon request. [SOF ¶ 21.] Detective Alexander then asked Hopson whether there were any guns in his vehicle. [SOF ¶ 22.] Hopson replied "no." [SOF ¶ 22.] Hopson then gave Detective Alexander his Arizona driver's license. [SOF ¶ 23.] A records check revealed that Hopson's license was

1  suspended. [SOF ¶ 23.]

2  Based on the probable cause Detective Alexander acquired from the plain smell of marijuana coming from Hopson's car and his inability to produce an AMMA card, *see State v. Cheatham*, 375 P.3d 66, 68 (Ariz. 2016), Detective Alexander initiated a search of Hopson's vehicle, *State v. Harrison*, 533 P.2d 1143, 1144 (Ariz. 1975) (odor of marijuana coming from vehicle justified warrantless search pursuant to the automobile exception). [SOF ¶ 24.] Additionally, because Hopson's license was suspended, the officers were required to impound Hopson's vehicle pursuant to A.R.S. § 28-3511(A)(1)(a), and an inventory search of Hopson's vehicle was required by policy. [SOF ¶ 25.]

Detective Alexander found a plastic water bottled filled with marijuana in the vehicle's center console and a Glock handgun with an extended magazine wedged between the driver's seat and the center console. [SOF ¶ 26.] A records-check revealed that Hopson was a convicted felon and was on probation for another crime, both of which prohibited him from possessing a firearm. [SOF ¶ 27.] This records check also revealed that Hopson had been arrested and convicted of multiple dangerous felonies in the past, including aggravated assault and several weapons-related crimes. [SOF ¶ 28.] Hopson was also arrested on an additional weapons-related charge not long after this incident occurred, and he is currently serving a prison sentence for that crime. [SOF ¶ 29.] After Detective Alexander discovered this evidence, he placed Hopson under arrest for possession of marijuana, illegally possessing a firearm, and driving with a suspended license. [SOF ¶ 30.]

At no point during this encounter with Hopson did any of the officers unholster their service weapons. [SOF ¶ 31.] No one ever pointed, or threatened to point, their weapons at Hopson or Jones. [SOF ¶ 32.] At no point during this encounter with Hopson did any of the responding officers grab him or forcefully remove him from his vehicle. [SOF ¶ 33.] Hopson was cooperative and obeyed commands; he stepped out of his vehicle under his own volition and stood by while Detective Alexander searched his vehicle. [SOF ¶ 34.]

The plaintiff is now suing Detective Alexander and Detective Grissom under § 1983, alleging that they searched and seized him without adequate suspicion and that they used

excessive force in doing so. [SOF ¶ 35.] The plaintiff, however, does not allege that the officers used any physical force, and he does not allege any sort of physical injuries. [SOF ¶ 36.] The plaintiff demands $25,000 in compensatory damages, $5,000,000 in punitive damages, and for the court to fire his arresting officers. [SOF ¶ 37.]

**B.    THE FOURTH AMENDMENT & QUALIFIED IMMUNITY**

There are two issues in a case involving qualified immunity: (1) whether the allegations show the violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the violation. *Pearson v. Callaghan*, 555 U.S. 223, 232 (2009); *Longoria v. Pinal Cty.*, 873 F.3d 699, 704 (9th Cir. 2017). The plaintiff alleges two Fourth Amendment violations: (1) that the defendants stopped and searched him without adequate suspicion; and (2) that these defendants used excessive force in detaining him. As shown below, Detective Alexander and Detective Grissom are entitled to judgment in their favor because they did not violate any of the plaintiff's (clearly established) rights.

**1.    The defendants did not violate the plaintiff's Fourth Amendment rights.**

Neither Detective Alexander nor Detective Grissom violated any of the plaintiff's (clearly established) Fourth Amendment rights. These detectives had reasonable suspicion to stop the plaintiff and probable cause to search his vehicle. Additionally, these detectives never used *any* force on the plaintiff, let alone excessive force. Their conduct clearly fell within the bounds of the Fourth Amendment. But even if this Court assumes the absolute worst—that the defendants pointed their weapons at the plaintiff during this stop—the defendants are still entitled to judgment in their favor.

**a.    Detective Alexander had reasonable suspicion to stop the plaintiff and probable cause to search his vehicle.**

The police may briefly detain a suspect if they have "reasonable suspicion" to believe that "criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion exists when "specific" and "articulable" facts would lead a reasonable officer to believe that a particular person is about to commit a crime. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Whether

the police had reasonable suspicion is gauged under the totality of the circumstances—taking into account the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992).

In *United States v. Johnson*, 581 F.3d 994, 999–1000 (9th Cir. 2009), for example, the Ninth Circuit found that the police had reasonable suspicion to stop and search a group of men who were loitering in front of a bank. In *Johnson*, two police officers observed three men standing outside a bank. *Id.* at 997. The officers stated that the suspects "appeared to be surveying the bank and the surrounding area." *Id.* Two of the suspects approached the bank, "whispering to each other," and the officers believed the men were "surveying the bank lobby." *Id.* Once the suspects noticed these officers, they left the bank and drove away. *Id.* The officers pulled over the vehicle, searched the suspects, and discovered two handguns in their vehicle. *Id.*

The suspects challenged the officers' search on Fourth Amendment grounds, arguing the officers did not have the level of suspicion needed to stop them. *Id.* at 998. The district court disagreed and found the officers had reasonable suspicion to stop the suspects. *Id.* On appeal, the Ninth Circuit affirmed, holding that "the record amply supported a 'stop and frisk.'" *Id.* at 998–99. The *Johnson* Court found that the officers' observations were "more than sufficient to support their suspicion that [the suspects] were casing a bank for a potential robbery." *Id.* at 1000. Because the suspects were wearing suspicious clothing and were "seen whispering to one another" while "surveying" the bank, "[a] trained law enforcement officer could reasonably suspect that these individuals…intend[ed] to rob the bank." *Id.*

The facts of this case are very similar to *Johnson*. Like the suspects in *Johnson*, the plaintiff and his associate were seen surveying a business for approximately 15 minutes. They were repeatedly parking and re-parking their vehicles, nervously looking around the parking lot, exchanging items, and whispering to each other. It was clear to Detective Alexander that the men were not at the gas station to make a purchase, and their nervous and unusual behavior led Detective Alexander to reasonably (and correctly) believe that they were committing a crime. *Johnson* shows Detective Alexander had reasonable suspicion to stop the plaintiff.

The odor of marijuana coming from the plaintiff's vehicle, moreover, gave the defendants

probable cause to search his vehicle. The Arizona Supreme Court has held that the odor of marijuana coming from a vehicle gives the police probable cause to search that vehicle. *State v. Cheatham*, 375 P.3d 66, 67 (Ariz. 2016); *State v. Harrison*, 533 P.2d 1143, 1144 (Ariz. 1975). And though Arizona had legalized medical marijuana for certain people at the time, A.R.S. §§ 36-2801 *et seq.*, the Arizona Supreme Court has consistently held that "the odor of marijuana…provides probable cause that a crime has occurred or is occurring," *Cheatham*, 375 P.3d at 68 (citing *State v. Sisco*, 373 P.3d 549, 555 (Ariz. 2016)). Because there was a strong odor of marijuana coming from the plaintiff's vehicle and the plaintiff was unable to produce an AMMA card upon request, the defendants had probable cause to search his vehicle. *Id.*

### b. The defendants did not use excessive force in detaining the plaintiff.

The ultimate touchstone in a use-of-force case—as in all Fourth Amendment cases—is whether the officers' conduct was objectively unreasonable under the circumstances. *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546–47 (2017). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

As the Ninth Circuit has explained, "an officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). Whether officers hypothetically could have used less [serious] or more effective force in executing an arrest is simply not the issue." *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994). Rather, the only germane issue is whether the officers' conduct was unconstitutionally excessive given the "range of force" that may have been allowable under the circumstances. *Bryan*, 630 F.3d at 818.

The plaintiff does not have a viable Fourth Amendment claim. The plaintiff does not allege that the officers used any appreciable physical force, and he does not allege any sort of physical

injuries. At no point during this encounter with Hopson did any of the officers unholster their service weapons. No one ever pointed, or threatened to point, their weapon at Hopson or Jones. At no point during this encounter with Hopson did any of the responding officers grab him or forcefully remove him from his vehicle. Hopson complied with the detectives' orders; he stepped out of his vehicle under his own volition and stood by while Detective Alexander searched his vehicle. These facts do not show a constitutional violation.

        **c.     Even if you assume the defendants pointed their weapons at the plaintiff, they still acted reasonably under the Fourth Amendment.**

In his complaint, the plaintiff alleges only one use of force in this case: that Detectives Alexander and Grissom pointed their guns at him while he was being arrested. Even if you assume the defendants drew their weapons, it was reasonable for Detectives Alexander and Grissom to do so because they reasonably suspected the plaintiff was armed and dangerous.

Although it is likely unreasonable for an officer to point his gun at a suspect if the suspect is clearly unarmed and not dangerous, *Robinson v. Solano Cty.*, 278 F.3d 1007, 1015 (9th Cir. 2002), an officer may point his gun at a suspect if he reasonably believes it is "necessary to protect his own safety or the safety of the public," *Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995). As the Ninth Circuit has noted, "it is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, *such as stopping them at gunpoint and handcuffing them*, are reasonable." *Id.* (emphasis added). Because officers are often confronted with difficult situations that are "tense, uncertain, and rapidly evolving," *Graham*, 490 U.S. at 396–97, the Ninth Circuit "allow[s] intrusive and aggressive police conduct" if it was "a reasonable response to legitimate safety concerns on the part of the investigation officers," *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996) (emphasis removed).

As the Seventh Circuit has explained, "courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police." *Baird v. Renbarger*, 576 F.3d 340, 346–47 (7th Cir. 2009) (citing *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 191–92 (1st Cir. 1998); *Sharrar v. Felsin*, 128 F.3d 810, 822 (3d Cir. 1997); *Collins v. Nagle*, 892 F.2d

- 8 -

489, 495–97 (6th Cir. 1989); *Edwards v. Giles*, 51 F.3d 155, 156–57 (8th Cir. 1995); and *Courson v. McMillan*, 939 F.2d 1479, 1496 (11th Cir. 1991)).

In *Alexander*, for example, the Ninth Circuit held that several police officers did not violate the Fourth Amendment when they pointed their guns at two suspects because the officers reasonably (but mistakenly) believed the suspects were previously involved in an armed robbery. *Alexander*, 64 F.3d at 1318, 1320–21; *accord United States v. Jacobs*, 715 F.2d 1343, 1345–46 (9th Cir. 1983) (finding that an officer acted reasonably when he ordered a suspect out of her vehicle at gunpoint because the officer believed the suspect was "possibly armed"). In *Alexander*, a police officer pulled over a vehicle whose occupants matched the description of armed-robbery suspects. *Alexander*, 64 F.3d at 1318. The officer called for backup to assist him with "a high-risk traffic stop." *Id.* Once backup arrived, several officers surrounded the vehicle with their guns drawn. *Id.* The officers handcuffed the vehicle's two occupants and placed them in the back of a patrol car. *Id.* These two occupants were released about ten minutes later when an eyewitness confirmed they were not involved in the robbery. *Id.*

The occupants subsequently sued these officers under § 1983, alleging wrongful arrest and excessive force. *Id.* The district court found the officers were not entitled to qualified immunity. *Id.* On appeal, the Ninth Circuit reversed. *Id.* <u>"It is well settled," the *Alexander* Court held, "that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable."</u> *Id.* at 1320. And because the officers had reason to believe the suspects were involved in an armed robbery, the court concluded that "the officers acted reasonably in ordering [them] from their car at gunpoint." *Id.*

Similarly, in *Williams v. City of Champaign*, 524 F.3d 826, 828–29 (7th Cir. 2008), the Seventh Circuit held that the police acted reasonably when they pointed their guns at a person they reasonably believed committed a robbery earlier in the day. In *Williams*, police received a report of a double robbery. *Id.* at 827. The officers located a vehicle similar to the robber's and "ordered the occupants out of the [vehicle] at gunpoint." *Id.* at 828. The occupants were released about twenty minutes later after an eyewitness confirmed they were not involved in the robbery.

1    *Id.*

2        The occupants subsequently sued these officers under § 1983, alleging wrongful arrest and excessive force. *Id.* at 827. The district court granted the officers' motion for summary judgment. *Id.* The Seventh Circuit affirmed. *Id.* at 828–29, 831. Writing for the court, Judge Posner noted that it is reasonable for officers to "assume the worst" when they are about to confront a potentially dangerous suspect. *Id.* at 828. "[I]f you are a police officer with reason to believe there may be an armed robber in a [vehicle]," Judge Posner reasoned, "you approach with utmost caution, which may include pointing a gun at the occupants." *Id.* The police are often forced "to make snap decisions" in "threatening, confusing, and rapidly developing situation[s]," he continued. *Id.* at 829. "The net of tort liability must not be drawn so tight that police must choose between risking their lives and failing to investigate adequately reports of violent crime." *Id.*

       Going even further, in *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 191–92 (1st Cir. 1998), the First Circuit held that a police officer acted reasonably when he pointed his gun at a woman who was attempting to cross a police barricade, even though there was no reason to believe she was armed or dangerous. In *Aponte*, several police officers were searching a house for weapons. *Id.* at 185. During the search, the homeowner's daughter came home and tried to enter the house. *Id.* An officer refused to let the daughter through the barricade surrounding the house. *Id.* When the daughter again tried to cross the police barricade, the officer allegedly "pointed his gun at her" and "threatened to kill her if she did not stay behind the police barricade." *Id.* at 191. The daughter sued this officer under § 1983, arguing that his gun-pointing amounted to excessive force under the Fourth Amendment. *Id.* The district court granted the officer's motion for summary judgment. *Id.* at 185. The First Circuit affirmed, holding that the daughter's gun-pointing allegations were "plainly insufficient to sustain a finding that [the officer's] actions were objectively unreasonable." *Id.* at 192.

       In this case, the defendants reasonably believed the plaintiff and his associate were casing a nearby gas station for an armed robbery. For roughly 15 minutes, the plaintiff's associate moved his vehicle to several different vantage points in the gas station's parking lot, backing in his vehicle each time. Each time he parked, the associate craned his neck and body to get a full look at his

surroundings, which led Detective Alexander to believe he was looking for potential witnesses and security cameras. The parties appeared to be "abnormally nervous" and clearly did not intend to make a purchase at the gas station. This is not typical behavior, and Detective Alexander was justified in believing these two men were about to commit a crime. And when the officers searched the plaintiff's vehicle, they discovered a loaded gun, confirming their suspicions.

In short, the detectives in this case—like the officers in *Alexander* and *Williams*—reasonably believed the suspects were armed and dangerous. And the Fourth Amendment allows officers to use "intrusive means to effect a stop" when they have reason to believe the suspect is armed. *United States v. Miles*, 247 F.3d 1009, 1013 (9th Cir. 2001); *see also United States v. Seni*, 662 F.2d 277, 283 (4th Cir. 1981) (drawing a gun is a reasonable safety precaution when there is reasonable suspicion of dangerous criminal activity). Because Detectives Alexander and Grissom reasonably believed the plaintiff was armed and dangerous, they would have been justified had they brandished their firearms.

\* \* \* \*

"[I]t unquestionably is reasonable for [an] officer to draw his weapon when approaching [a] vehicle" in which the occupants might be "armed and dangerous." *Foote v. Dunagan*, 33 F.3d 445, 448–49 (4th Cir. 1994) (collecting cases). In this case, Detective Alexander and Detective Grissom reasonably believed the plaintiff was armed and dangerous when they approached his vehicle—and their search of his vehicle ultimately yielded a loaded firearm, confirming their suspicions. In other words, even if this Court assumes these detectives drew their firearms during this stop, they are still entitled to judgment in their favor as a matter of law because such conduct is objectively reasonable under the Fourth Amendment.

2.  **At a minimum, the defendants are entitled to qualified immunity.**

Once an officer asserts qualified immunity, "the plaintiff bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). In this regard, the plaintiff is required to show that the law that existed at the time of the alleged violation had placed the relevant constitutional issues "beyond debate," such that "every reasonable official would have understood…that the conduct [at issue] was a

violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

The specificity of precedent is "especially important in the Fourth Amendment context" because it is difficult for officers to apply broad principles of reasonableness to the dicey situations they often confront. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) ("[O]vercoming qualified immunity is especially difficult in excessive-force cases."). "Use of excessive force," in other words, "is an area of the law 'in which the result depends very much on the facts of each case,' and thus <u>police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue</u>." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 13). Whether a right was "clearly established" is "solely a question of law for the judge."[1] *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

### a. A reasonable officer in Detective Alexander's shoes would have believed he had reasonable suspicion to stop and search the plaintiff.

The defendants are entitled to qualified immunity on the plaintiff's unlawful-stop claim if "a reasonable officer *could have believed*" that reasonable suspicion existed in this case. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (emphasis added); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871–72 (9th Cir. 1993). Given Detective Alexander's observations of the plaintiff and his associate, a reasonable officer would have believed the two men were about to commit a crime. For roughly 15 minutes, the plaintiff's associate moved his vehicle to several different vantage points in the gas station's parking lot, backing in his vehicle each time. Each time he parked, the associate craned his neck and body to get a full look at his surroundings, which led Detective Alexander to believe he was looking for potential witnesses, escape routes, security cameras, etc. The parties appeared to be "abnormally nervous" and clearly did not intend to make a purchase at the gas station. This is not typical behavior, and Detective Alexander was justified in believing these two men were about to commit a crime. And when the officers searched the

---

[1] The Supreme Court has also instructed the lower courts to decide issues of qualified immunity at "the earliest possible stage in litigation" to keep court costs down and to ensure that officers aren't forced to respond to unnecessary discovery. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

plaintiff's vehicle, they discovered a loaded gun, confirming their suspicions. Given these facts, there is no doubt that "a reasonable officer could have believed" he had reasonable suspicion to the stop the plaintiff and his associate. *Id.*

Importantly, the facts of this case are very similar to *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court's seminal case on reasonable suspicion. In *Terry*, a detective observed two men walking back and forth along a storefront. *Id.* at 6. The suspects took turns walking in front of the store, peering into its window, and then conferring at a nearby street corner. *Id.* This led the detective to believe these men were "casing" the store for an armed robbery. *Id.* The detective then grabbed one of the men, spun him around, and searched him for weapons. *Id.* at 7. The detective ultimately found a gun in the man's coat, confirming his suspicions. *Id.* The Court concluded that this detective had the requisite "reasonable suspicion" needed to stop and search these men given their "unusual behavior." *Id.* at 30.

Because the facts of this case are so similar to *Terry*—one of the most famous court cases on policing—a reasonable officer would have believed he had reasonable suspicion to stop the plaintiff and his associate. Based on what he saw, Detective Alexander was justified in stopping the plaintiff and his associate. But even if this Court determines that Detective Alexander lacked the requisite level of suspicion, he is still nonetheless entitled to immunity because a reasonable officer in his position "could have believed" the stop was justified. *Anderson*, 483 U.S. at 641; *see also Adams v. Williams*, 407 U.S. 143, 145 (1972) ("The Fourth Amendment does not require a policeman…to simply shrug his shoulders and allow a crime to occur" simply because he "lacks the precise level of information necessary."). As such, the defendants are, at a minimum, entitled to qualified immunity and judgment in their favor.

### b. Even if you assume the defendants pointed their weapons at the plaintiff, they are still entitled to immunity.

Even if you assume that Detectives Alexander and Grissom pointed their guns at the plaintiff during this encounter, they are still entitled to immunity on the plaintiff's excessive-force claim because the plaintiff did not have a clearly established right not to have a gun pointed at him under these particular circumstances. Every Circuit to address the issue has held that the Fourth

Amendment allows officers to point their guns at a suspect if they have reason to believe the suspect is armed and dangerous.[2] That is exactly what happened in this case. When Detective Alexander and Detective Grissom approached the plaintiff's vehicle, they reasonably (and correctly) believed that he was armed. And because "it unquestionably is reasonable for [an] officer to draw his weapon when approaching [a] vehicle" in which the occupants might be "armed and dangerous," this alleged gun-pointing falls within the bounds of the Fourth Amendment. *Foote v. Dunagan*, 33 F.3d 445, 448–49 (4th Cir. 1994). The defendants are thus entitled to judgment in their favor as a matter of law.

The three leading Ninth Circuit cases on when it is unreasonable for an officer to point his gun at a suspect are *Robinson v. Solano Cty.*, 278 F.3d 1007 (9th Cir. 2002), *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009), and *Thompson v. Rahr*, 885 F.3d 582 (9th Cir. 2018). In those cases, the Ninth Circuit held that police used excessive force when they pointed a gun at a suspect because (a) the suspect was clearly unarmed, (b) the suspect was stopped for committing only a misdemeanor, and (c) the suspect was in or near his own home. *Robinson*, 278 F.3d at 1010, 1015; *Hopkins*, 573 F.3d at 759, 776; *Thompson*, 885 F.3d at 587.

This case is different from *Robinson*, *Hopkins*, and *Thompson* in three significant ways. First, unlike the suspects in those cases, the suspects in this case were armed. In *Robinson* and *Thompson*, the officers knew their suspects were unarmed. In this case, on the other hand, the suspects were stopped because Detective Alexander believed they were "casing" a gas station for an armed robbery, and a firearm was later found at the plaintiff's side. The defendants reasonably (and correctly) believed these suspects were armed and dangerous, making their alleged gun-pointing reasonable.

Second, unlike the suspects in *Robinson*, *Hopkins*, and *Thompson*, the suspects in this case were suspected of plotting a serious felony—armed robbery—and the police ultimately discovered

---

[2] *E.g., Sharrar v. Felsin*, 128 F.3d 810, 822 (3d Cir. 1997); *Foote v. Dunagan*, 33 F.3d 445, 448–49 (4th Cir. 1994); *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016); *Collins v. Nagle*, 892 F.2d 489, 495–97 (6th Cir. 1989); *Williams v. City of Champaign*, 524 F.3d 826, 828–29 (7th Cir. 2008); *Edwards v. Giles*, 51 F.3d 155, 156–57 (8th Cir. 1995); *Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995); *Courson v. McMillan*, 939 F.2d 1479, 1496 (11th Cir. 1991).

a weapon in their vehicle. The suspects in this case are not like the passive, unarmed misdemeanants seen in *Robinson*, *Hopkins*, and *Thompson*. Rather, these suspects were armed and were suspected of casing a gas station for an armed robbery. Although the Ninth Circuit has recognized that it is unreasonable and excessive to pull a gun on an unarmed, cooperative misdemeanant, *Robinson*, 278 F.3d at 1010, 1015, it is quite another thing for officers to pull a gun on a suspected armed robber, *Williams*, 524 F.3d at 828–29. <u>In this case, it would have been reasonable for the detectives to brandish their firearms, as they reasonably believed the suspects were armed, dangerous, and about to commit a serious felony</u>.

Third, unlike *Robinson* and *Hopkins*, the seizure in this case took place in a gas station parking lot, rather than the suspect's home. The seizure in *Hopkins* took place in the suspect's bedroom, where warrantless arrests are presumptively unreasonable. *Hopkins*, 573 F.3d at 773 (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). And the seizure in *Robinson* occurred on the suspect's curtilage immediately surrounding his home, which is afforded the same heightened Fourth Amendment protections. *Robinson*, 278 F.3d at 1010; *Florida v. Jardines*, 569 U.S. 1, 6–7 (2013). The Supreme Court has drawn a sharp distinction between traffic stops and in-home seizures. *Thompson*, 885 F.3d at 589. Traffic stops are "especially fraught with danger to police officers," and the Court has encouraged officers to "exercise unquestioned command" over traffic stops to minimize "risk of harm to both the police and the occupants." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). In this case, Detectives Alexander and Grissom acted as the Supreme Court said they should: they took immediate, forceful control of the situation to defuse what they reasonably believed to be the early stages of an armed robbery. They should not be punished for doing so.

These differences show that the existing caselaw does not "squarely govern" the facts of this case. *See Kisela*, 138 S. Ct. at 1153. *Robinson* and its progeny do not control this case because the defendants reasonably believed the suspects were armed, dangerous, and about to commit a felony. <u>There is no case in the Ninth Circuit favorable to the plaintiff that squarely governs this case</u>. In fact, the available cases—from both inside and outside the Ninth Circuit—show the detectives acted appropriately under the circumstances. *See Alexander*, 64 F.3d at 1320 (holding

that it is appropriate to stop a suspect at gunpoint if the officer reasonably believes it is necessary to protect himself or the public); *Washington*, 98 F.3d at 1186 (noting that "intrusive and aggressive police conduct" does not violate the Fourth Amendment if the officers reasonably believed the suspect posed a danger to officers or others); *Foote*, 33 F.3d at 448 (noting that "it unquestionably is reasonable for [an] officer to draw his weapon when approaching [a] vehicle" in which the occupants might be "armed and dangerous"); *Williams*, 524 F.3d at 828–29 (holding that the police acted reasonably when they pointed their guns at a person they reasonably believed committed a robbery).

The Ninth Circuit recently addressed a case with facts similar to this one in *Smith v. City of Stockton*, 818 Fed. Appx. 697 (9th Cir. 2020). There, the district court, relying on *Robinson v. Solano Cty.*, 278 F.3d 1007 (9th Cir. 2002), denied the officer qualified immunity. *Smith*, 818 Fed. Appx. at 699. On interlocutory appeal, the Ninth Circuit reversed, holding that there was no clearly established law that declared the officer's gun-pointing unconstitutional. *Id.* Unlike *Robinson*, which occurred in the plaintiff's home, the officer in *Smith* pointed his gun at the plaintiff during a traffic stop, a circumstance that is "especially fraught with danger." *Id.* (quoting *Johnson*, 555 U.S. at 330). To the Ninth Circuit, this discrepancy was enough to find that the law was not clearly established. *Id.*

\* \* \* \*

Although the Ninth Circuit has recognized that it is unreasonable for officers to point a gun at a suspect under certain circumstances, *Thompson*, 885 F.3d at 587, those circumstances are not present in this case. In this case, when Detective Alexander and Detective Grissom detained the plaintiff, they reasonably believed he was armed, dangerous, and about to commit a crime. They were thus justified in drawing their firearms. *Williams*, 524 F.3d at 828–29 (holding that the police acted reasonably when they pointed their guns at a person they reasonably believed committed a robbery). Because this case is meaningfully different than *Robinson*, *Hopkins*, and *Thompson*— and because more-similar caselaw shows that the defendants acted reasonably—there is no caselaw favorable to the plaintiff that "squarely governs" this case. *See Kisela*, 138 S. Ct. at 1153. As such, Detectives Alexander and Grissom are entitled to qualified immunity and summary judgment

in their favor. *Id.*

## C. **CONCLUSION**

The facts of this case do not show a Fourth Amendment violation. The plaintiff does not allege that the defendants used any serious physical force, and he does not allege any sort of physical injuries. The defendants, moreover, maintain that they never pointed, or threatened to point, their weapons at the plaintiff. But even if this Court assumes the worst—that the defendants pointed their firearms at the plaintiff during this encounter—the plaintiff's excessive-force claim still fails because the defendants reasonably (and correctly) believed that the plaintiff was armed and committing a crime when they approached his vehicle. The caselaw cited in this motion definitively shows that the defendants did not exceed the bounds of the Fourth Amendment.

Additionally, even if this Court finds that the defendants' conduct was somehow unconstitutionally excessive, existing caselaw does not "squarely govern" the facts of this case. This case is easily distinguishable from the Ninth Circuit's existing unreasonable-gun-pointing cases, meaning Detectives Alexander and Grissom are entitled to qualified immunity. "When properly applied," qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Detectives Alexander and Grissom are not "plainly incompetent" and they did not "knowingly violate the law." As such, they are entitled to summary judgment in their favor.

**ACCORDINGLY,** because Detective Alexander and Detective Grissom did not violate any of the plaintiff's clearly established rights, they respectfully ask this Court to enter summary judgment in their favor.

DATED this 22nd day of December, 2020.

CITY OF MESA ATTORNEY'S OFFICE

Alexander J. Lindvall
Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2020, I served the attached document by mail on the following, who is not a registered participant of the CM/ECF System:

Dejuan Markeiss Hopson, #291602
ASPC - Tucson – Winchester Unit
P.O. Box 24401
Tucson, AZ 85734
Pro Se Plaintiff

/s/ Toni Aglialoro