JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Dejuan Markeiss Hopson,

    Plaintiff,

v.

J. Alexander, et al.,

    Defendants.

No. CV 20-00128-PHX-SMB (DMF)

**ORDER**

Plaintiff Dejuan Markeiss Hopson, who is currently confined in the Arizona State Prison Complex-Tucson, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Jacob Alexander and Brandon Grissom move for summary judgment. (Doc. 27.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 29), and he failed to do so.

The Court will grant in part and deny in part the Motion for Summary Judgment.

**I.    Background**

In the First Amended Complaint, Plaintiff relevantly alleges that Defendants Alexander and Grissom violated his Fourth Amendment rights during his arrest, search, and seizure. (Doc. 7.) On screening the First Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Fourth Amendment excessive force claims in Counts One and Two against Defendants Alexander and Grissom and directed them to answer these claims. (Doc. 8.)[1]

---

[1] Plaintiff also named Defendants Does 1-4 in the First Amended Complaint. (Doc.

On December 22, 2020, Defendants Alexander and Grissom filed the instant Motion for Summary Judgment. (Doc. 27.) Defendants contend they did not violate Plaintiff's Fourth Amendment rights, but even if they did, they are entitled to qualified immunity. (*Id.*)

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."

---

7.) In the screening Order, the Court gave Plaintiff 120 days to file a notice of substitution substituting the actual names of Defendants Does 1-4. (Doc. 8.) On May 13, 2020, Plaintiff filed a Notice of Substitution substituting Christen Rope for Defendant Doe 1 and Joshua Leou for Defendant Doe 2. (Doc. 9.) In a May 21, 2020 Order, the Court directed Defendants Rope and Leou to respond to the First Amended Complaint. (Doc. 10.) Defendants Rope and Leou filed a Motion to Dismiss (Doc. 17), which the Court granted in a December 11, 2020 Order. (Doc. 26.) In a February 1, 2021 Order, the Court dismissed Defendants Does 3 and 4 because Plaintiff had not timely filed a notice of substitution for those Defendants. (Doc. 30.)

*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Liberty Lobby*, *Inc.*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.  Facts[2]

### A.  Plaintiff's Facts

Plaintiff arrived at a Circle K in the afternoon on January 25, 2018 and was having a private conversation in his vehicle when Defendant Alexander parked his vehicle directly behind Plaintiff's and, without announcing that he was a police officer, approached Plaintiff at gunpoint. (Doc. 7 at 5.)[3] Defendant Alexander, without any provocation or resistance from Plaintiff, opened Plaintiff's driver's side door and forcefully removed Plaintiff from the vehicle. (*Id.*) Defendant Alexander placed his hand on Plaintiff's left arm and grabbed it with such force that Plaintiff thought he was being robbed, putting him "in a state of shock." (*Id.*) While this was occurring, Defendant Grissom was standing in front of Plaintiff's vehicle with his gun pointed directly at Plaintiff, "as if to challenge [Plaintiff] to resist so [Defendant Grissom] could shoot [him]." (*Id.*) Defendant Alexander forcefully placed Plaintiff in handcuffs and "verbally dared [Plaintiff] to make a move in resistance to his actions." (*Id.*) Neither Plaintiff nor his passenger resisted or were verbally or physically threatening to any of the officers. (*Id.*) After Plaintiff was forced out of his

---

[2] Because Plaintiff failed to file a response or controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence in the record. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (where the nonmovant is a pro se litigant, a court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion).

[3] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

- 3 -

vehicle, he was handcuffed with his hands behind his back and pulled to the curb. (*Id.* at 7.)

Defendant Alexander instructed Plaintiff to sit down and told Defendant Grissom to stand behind Plaintiff. (Doc. 7 at 7.) Plaintiff asserts that while Defendant Grissom stood behind him and watched "[Plaintiff's] every move," Defendant Alexander ordered four other officers to search Plaintiff's vehicle. Marijuana was found in his vehicle, but he told Defendants Alexander and Grissom that he was a "medical marijuana card holder." (*Id.*) After hearing this, Defendant Alexander re-searched Plaintiff's vehicle and found a weapon. (*Id.*) Plaintiff was charged with "prohibited possessor, failure to admit, and possession of marijuana," but all of the charges were dismissed after the trial court granted his "motion to suppress for unlawful arrest, no probable cause, and no reasonable susp[ic]ion." (*Id.*)

"At the conclusion of this ordeal," Plaintiff was arrested and charged with misconduct involving weapons, but this charge was ultimately dismissed after the trial court granted his motion to suppress. (*Id.* at 6.)

**B.  Defendants' Facts**

On January 25, 2018, at approximately 4:00 p.m., Defendant Alexander pulled into the parking lot of a Circle K gas station to purchase a drink. (Declaration of Detective Jacob Alexander, Doc. 28-1 at 2 ¶ 3.) A few minutes later, while sitting in his unmarked police vehicle, Defendant Alexander saw a man—later identified as Tommy Jones—pull into the gas station parking lot. (*Id.* ¶ 4.) Defendant Alexander observed what he "considered to be suspicious behavior from Jones." (*Id.*) Defendant Alexander observed Jones reverse his vehicle into the parking spot furthest from the gas station's doors. (*Id.* ¶ 5.) Defendant Alexander observed Jones "nervously" looking around the gas station. (*Id.* ¶ 6.) Jones was "craning his neck inside the vehicle to look around the gas station and the parking lot." (*Id.* ¶ 7.)

Jones then moved his vehicle to several different parking spots, backing his vehicle in each time. (*Id.* ¶ 8.) Each time he pulled into a new spot, he turned his body 180 degrees

in the vehicle to "get a good look at his surroundings." (*Id.*)  In his police report, Defendant Alexander stated that "Jones appeared to be abnormally nervous," as he was constantly "peer[ing] back and forth through the parking lot and look[ing] over his shoulder after parking multiple times." (*Id.* ¶ 9.)  Jones continued this activity for approximately 10 to 15 minutes, "constantly scanning the parking lot and the gas station with his eyes." (*Id.* ¶ 10.)  Based on his training and experience, Defendant Alexander believed that Jones was "casing" the gas station for a robbery. (*Id.* ¶ 11.)  The movement of Jones's vehicle led Defendant Alexander to believe Jones was looking for witnesses, police officers, and security cameras (*Id.* at 3 ¶ 11), and the fact that Jones was constantly looking around led Defendant Alexander to believe Jones was trying to gather as much information as possible about his surroundings, "which is not typical for someone who is merely visiting a gas station." (*Id.*)  In addition, the fact that Jones always backed his vehicle into the parking spots led Defendant Alexander to believe Jones was positioning his vehicle for a speedy getaway and/or attempting to obscure his license plate. (*Id.*)  The fact that Jones remained in his vehicle for approximately 15 minutes led Defendant Alexander to believe that Jones had no intention of making a purchase at the gas station. (*Id.*)  Jones's actions led Defendant Alexander to suspect that an armed robbery was about to occur. (*Id.* ¶ 12.)

After about 15 minutes of "this activity," Defendant Alexander observed another vehicle, driven by Plaintiff, enter the parking lot. (*Id.* ¶ 13.)  Plaintiff parked his vehicle in the parking space next to Jones's vehicle. (*Id.* ¶ 14.)  Jones then exited his vehicle and got into the front passenger seat of Plaintiff's vehicle. (*Id.* ¶ 15.)  Defendant Alexander saw the two men "conversing and exchanging items with one another." (*Id.* ¶ 16.)

A few moments later, Jones exited Plaintiff's vehicle, got something out of his car, and returned to Plaintiff's vehicle. (*Id.* ¶ 16.)  Based on his training and experience, Defendant Alexander believed Jones and Plaintiff were engaged in criminal activity. (*Id.* ¶ 18.)  Defendant Alexander called for backup. (*Id.* ¶ 19.)  Defendant Grissom arrived a few minutes later and parked his squad car behind Plaintiff's vehicle. (*Id.* ¶ 20; Declaration of Detective Brandon Grissom, Doc. 28-2 ¶ 5.)  Defendant Alexander then approached the

driver's side of Plaintiff's vehicle and knocked on the window. (Doc. 28-1 at 3 ¶ 21.) Plaintiff rolled down his window, and both Defendant Alexander and Defendant Grissom immediately smelled the odor of marijuana coming from the car. (*Id.* at 4 ¶ 22; Doc. 28-2 at 1 ¶ 7.) When Defendant Alexander asked about the smell of marijuana, Plaintiff told him that he smoked marijuana before driving but that he was an Arizona Medical Marijuana Act (AMMA) cardholder. (Doc. 28-1 at 4 ¶ 23.) Plaintiff was unable to produce an AMMA card upon request. (*Id.*) Defendant Alexander asked Plaintiff whether there were any guns in his vehicle, to which he replied "no." (*Id.* ¶ 24.)

Plaintiff gave Defendant Alexander his Arizona driver's license. (*Id.* ¶ 25.) A records check revealed that Plaintiff's license was suspended. (*Id.*) Based on the smell of marijuana coming from Plaintiff's car and his inability to produce an AMMA card, Defendant Alexander initiated a search of Plaintiff's vehicle. (*Id.* ¶ 26.) Additionally, because Plaintiff's license was suspended, Defendants were required to impound Plaintiff's vehicle, and an inventory search of Plaintiff's vehicle was required by policy. (*Id.* ¶ 27.) Defendant Alexander found a plastic water bottled filled with marijuana in the vehicle's center console and a Glock handgun with an extended magazine wedged between the driver's seat and the center console. (*Id.* ¶ 28.)

A records check revealed that Plaintiff was on probation for another crime, which prohibited him from possessing a firearm. (*Id.* ¶ 29.) Additionally, Plaintiff was prohibited from possessing a firearm because he is a convicted felon. (*Id.*) The records check also revealed that Plaintiff has been arrested and convicted of multiple dangerous felonies in the past, including aggravated assault and several weapons-related crimes. (*Id.*)

Based on this information, Defendant Alexander placed Plaintiff under arrest for possession of marijuana, illegally possessing a firearm, and driving with a suspended license. (*Id.* ¶ 30.) According to Defendants, at no point during the encounter with Plaintiff did Defendants grab Plaintiff, forcefully remove him from his vehicle, or unholster their service weapons (Doc. 28-1 at 4 ¶ 31, 5 ¶ 32; Doc. 28-2 at 2 ¶ 13.).) Defendants assert that Plaintiff was cooperative and obeyed commands; he stepped out of his vehicle under

his own volition and stood by while Defendant Alexander searched his vehicle.  (Doc. 28-1 at 5 ¶ 32; Doc. 28-2 at 2 ¶ 13.)

On February 2, 2018, Plaintiff was charged in Maricopa County Superior Court case #CR2018-104563 with possession of marijuana and possession of a weapon by a prohibited possessor, with an offense date of January 25, 2018.[4]  On July 13, 2018, the trial court granted the State's motion to dismiss Count 2 of the Indictment.[5]  On September 21, 2018, Plaintiff filed a motion to suppress the evidence found during the search of his vehicle.[6]  On May 10, 2019, the trial court granted Plaintiff's motion to suppress, concluding there was insufficient justification for an investigatory stop at the time the stop was initiated.[7]  On May 24, 2019, the trial court granted the State's motion to dismiss the entire case without prejudice.[8]

**IV.  Discussion**

As noted above, Defendants argue that they are entitled to summary judgment because Plaintiff has failed to demonstrate a material issue of disputed fact with regard to the violation of his Fourth Amendment rights.  They also argue in the alternative that they are entitled to qualified immunity.  Because the constitutionality of Defendants' conduct is a component of the qualified immunity analysis, the Court will answer both questions in the context of that analysis.

**A.  Qualified Immunity Standard**

Government officials enjoy qualified immunity from civil damages unless their

---

[4] *See* http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2018-104563 (last accessed July 28, 2021).

[5] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/072018/m8368623.pdf (last accessed July 28, 2021).

[6] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/092018/m8463523.pdf (last accessed July 28, 2021).

[7] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/052019/m8729768.pdf (last accessed July 28, 2021).

[8] *See* http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2018-104563, *supra* n.4.

conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts show the officer's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). Although "'it is often beneficial' to perform the analysis in the sequence outlined above," *id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)), courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*)). "[T]he contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

B.   **Search and Seizure**

Plaintiff claims Defendant Alexander lacked reasonable suspicion to make an investigatory stop of his vehicle, thereby making it an unlawful seizure in violation of the Fourth Amendment. *See Green v. City & Cty. of San Fran.*, 751 F.3d 1039, 1045 (9th Cir. 2014) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (holding that detention of automobile is seizure within meaning of Fourth Amendment)). Defendants respond that they are entitled to qualified immunity on Plaintiff's unlawful-stop claim. *See Anderson*

*v. Creighton*, 483 U.S. 635, 641 (1987); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871–72 (9th Cir. 1993). Defendants are correct.

Whether a right was "clearly established" is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010). And Plaintiff "bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). Unless "officers of reasonable competence could disagree on the issue whether a chosen course of action is constitutional, immunity should be recognized." *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 993 (9th Cir. 1999) (cleaned up) (quoting *Brewster v. Board of Educ.*, 149 F.3d 971, 977 (9th Cir.1998)).

As a general principle, "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "A law enforcement officer may, consistent with the Fourth Amendment, conduct a 'brief investigatory stop' of a suspect when the officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Foster v. City of Indio*, 908 F.3d 1204, 1213 (9th Cir. 2018) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Accordingly, "the officer in question 'must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" *United States v. Montero-Camargo*, 208 F.3d 1122, 1139 (9th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119 (2000)). "Rather, reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *Id.* (citing *Cortez*, 449 U.S. at 418; *United States v. Salinas*, 940 F.2d 392, 394 (9th Cir. 1991)). Applying these general principles of law to the facts at hand—where Defendants' reasonable suspicion came from the actions of Jones and not Plaintiff—there is a colorable question whether the Defendants violated Plaintiff's Fourth Amendment rights.

However, "[t]he Supreme Court has repeatedly instructed that we examine 'whether the violative nature of *particular* conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law." *Sharp v. Cty. of Orange*, 871 F.3d 901, 910 (9th Cir. 2017) (quoting *Mullenix*, 577 U.S. at 12).  Consequently, even when precedent establishes a "general rule," courts "cannot simply apply that general rule to the facts of [the present] case." *Id*. at 910–11.  "Except in the rare case of an 'obvious' instance of constitutional misconduct," a plaintiff "must '*identify a case* where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment.'" *Id.* at 911 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

Put differently, a plaintiff "must point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful." *Id.*  This notice requires that the prior precedent be "'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Plaintiff has not met this burden here.  Plaintiff has not pointed to a sufficiently analogous case—or any case for that matter—in his complaint, (Doc. 7), nor has he responded to Defendants' Motion for Summary Judgement.

Moreover, the facts from the Supreme Court's seminal case on reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1 (1968), are very similar to the facts in this case.  In *Terry*, a detective observed two men walking back and forth along a storefront. *Id.* at 6.  The suspects took turns walking in front of the store, peering into its window, and then conferring at a nearby street corner. *Id.*  During this process, a third man approached them and engaged in brief conversation before walking a different direction. *Id.*  All of this led the detective to believe that *all three men* were "casing" the store for an armed robbery. *Id.*  The detective then grabbed one of the men, spun him around, and searched him for weapons—which he found. *Id. at 7*.  The Court concluded that this detective had the

requisite "reasonable suspicion" needed to stop and search these men given their "unusual behavior." *Id.* at 30.

As in *Terry*, the officer here believed Jones and Plaintiff were casing the gas station for a robbery. Defendant Alexander avers that Jones "nervously" looked around the gas station; craned his neck inside the vehicle to look around the gas station and the parking lot; moved his vehicle to several different parking spots; backing his vehicle in each time; turned his body 180 degrees in the vehicle to get a good look at his surroundings; constantly peered back and forth through the parking lot and looked over his shoulder after parking multiple times." (Doc. 28-1 at 2–3.) Defendant Alexander further claims that he believed Jones was "casing" the gas station for a robbery, that Jones had twice entered Plaintiff's car, and that Plaintiff and Jones where conversing and exchanging unknown items. (*Id.*) Based his "training and experience," Detective Alexander—like the detective in *Terry*—believed that *both men* "were likely engaged in criminal activity." (*Id.* at 3.) Therefore, Detective Alexander called for backup and—like the detective in *Terry*—stopped Plaintiff and Jones, searched the vehicle, and ultimately found a firearm. (*Id.* at 4.)

Because the facts of this case are so similar to *Terry*, a reasonable officer easily "could have believed" that he had reasonable suspicion to stop the Plaintiff and his associate. *See Anderson*, 483 U.S. at 641; *see also Romero*, 931 F.2d at 627 ("Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if . . . the officer could have reasonably believed that his particular conduct was lawful."). Moreover, Plaintiff has failed to meet his burden of providing more specific, analogous caselaw that would put Defendants on notice that they were violating a clearly established constitutional right. *See Sharp*, 871 F.3d at 910 ("Plaintiffs must 'identify a case where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment.'" (quoting *Pauly*, 137 S. Ct. at 552)). Consequently, Defendants are entitled to qualified immunity on this claim.

Therefore, Defendants' Motion for Summary Judgment with respect to the Fourth Amendment search and seizure claim will be granted.

### C. Excessive Force

#### 1. Constitutional Violation

A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Determining whether the force used was reasonable requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The Court must consider "the facts and circumstances of each particular case." *Id.* at 396. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry*, 392 U.S. at 20–22). This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The Ninth Circuit has set forth a three-part test to determine whether a Fourth Amendment violation has occurred. *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010). First, the Court assesses "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted." *Id.* (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). Second, the Court evaluates the government's interests by assessing the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* (citing *Miller*, 340 F.3d at 964; *Graham*, 490 U.S. at 396). Third, the Court balances "'the gravity of the

intrusion on the individual against the government's need for that intrusion.'" *Id.* (quoting *Miller*, 340 F.3d at 964.)

The *Graham* factors are not exclusive. Other relevant factors include the availability of less intrusive force and the parties' "relative culpability" *i.e.,* which party created the dangerous situation and which party is more innocent. *Scott v. Harris*, 550 U.S. 372, 384 (2007); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033-34 (9th Cir. 2018).

The factors the Court must consider "are simply a means by which to determine objectively 'the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 396-97). Ultimately, the Court must determine whether the force used was "'greater than [was] reasonable under the circumstances.'" *Espinosa*, 598 F.3d at 537 (quoting *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002)).

At the summary judgment stage, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record," the question of whether an officer's actions were objectively reasonable under the Fourth Amendment is a "pure question of law." *Scott*, 550 U.S. at 381 n.8. An officer is not entitled to summary judgment if the evidence, viewed in the nonmovant's favor, could support a finding of excessive force. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

### a.     Nature of the Force Inflicted

The Court must first evaluate "the type and amount of force inflicted." *Espinosa*, 598 F.3d at 537 (quotation omitted). "[E]ven where some force is justified, the amount actually used may be excessive." *Santos*, 287 F.3d at 853.

The parties dispute whether Defendants used any physical force against Plaintiff. Although Defendants contend that Plaintiff does not allege that Defendants used any physical force or that he suffered any physical injury, taking the facts in the light most favorable to Plaintiff, Defendant Alexander approached Plaintiff at gunpoint. The Ninth Circuit has held that "the pointing of a gun at someone may constitute excessive force,

even if it does not cause physical injury." *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007).

In addition, taking the facts in the light most favorable to Plaintiff, Defendant Alexander, without any provocation or resistance from Plaintiff, opened Plaintiff's driver's side door and forcefully removed Plaintiff from the vehicle. (Doc. 7 at 7.) Defendant Alexander placed his hand on Plaintiff's left arm and grabbed it with such force that Plaintiff was "put . . . in a state of shock" and thought he was being robbed. (*Id.*) Viewing the facts in the light most favorable to Plaintiff, the Court finds Defendant Alexander used *some* force in arresting Plaintiff. Thus, this factor weighs in favor of Plaintiff.

### b. Government Interests

#### (1) Severity of Crime

When evaluating the importance of the government interest at stake, the Court must first examine the severity of the crime at issue. *Espinosa*, 598 F.3d at 537. More serious crimes may require greater levels of force to apprehend the subject. *See Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1297 (D. Idaho 2011).

When Defendant Alexander approached Plaintiff's vehicle, Alexander did not know whether Plaintiff had committed or was about to commit any crime. Defendant Alexander only *suspected* that Plaintiff *might* commit a crime. However, when he approached the car with his gun drawn, he had not observed Plaintiff committing any crime. Thus, this factor weighs in favor of Plaintiff.

#### (2) Immediate Threat

The second, "most important" factor in the governmental interest inquiry is whether Plaintiff "posed an immediate threat to the safety of the officers or others." *Matto v. Agaranos*, 661 F.3d 433, 441 (9th Cir. 2011). When considering whether there was an immediate threat, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citation and quotation omitted).

Defendants contend that, even assuming they pointed their firearms at Plaintiff, his excessive force claim still fails because Defendants "reasonably (and correctly) believed [Plaintiff] was armed and committing a crime when they approached his vehicle." (Doc. 27 at 1.) "A wide variety of factors support a reasonable belief that an individual is armed and dangerous. These include an officer's observation of a visible bulge in an individual's clothing; sudden movements or repeated attempts to reach for an object not immediately visible; and the nature of the suspected crime." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009) (internal citations omitted). "However, facts merely establishing that, *if* an individual were armed, he would be dangerous are insufficient if there was no reason to believe that the individual actually *was* armed." *Id.* (citing *United States v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006)).

Regarding their belief that Plaintiff was armed, Defendants have not pointed to any evidence in the record that demonstrates that they believed, reasonably or otherwise, that Plaintiff had a weapon or that he otherwise posed a threat to their safety or the safety of others *when Defendant Alexander approached Plaintiff's vehicle*. Rather, Defendant Alexander had observed only that Plaintiff had entered the parking lot and parked next to Jones's vehicle; Jones got into Plaintiff's vehicle; Jones and Plaintiff were conversing and exchanging items; and Jones exited Plaintiff's vehicle, retrieved something from his vehicle, and returned to Plaintiff's vehicle. Before a gun was found in Plaintiff's vehicle, Defendants had not observed either Jones or Plaintiff with any kind of weapon. Defendants' *subsequent* discovery that Plaintiff was armed does not mean Defendants reasonably believed at the time they pointed their weapons at Plaintiff that Plaintiff was armed. *See* (Doc. 27 at 11.)

In addition, viewing the facts in the light most favorable to Plaintiff, Defendant Alexander forcefully removed Plaintiff from the vehicle *before* the vehicle was searched. Defendant Alexander found the Glock in the center console of Plaintiff's vehicle because he had initiated a search of Plaintiff's car based on the "plain smell" of marijuana and because an inventory search of the vehicle was required by policy. Defendants have not

pointed to any evidence that suggests they had reason to fear for their safety or that Plaintiff was armed merely because of the "plain smell" of marijuana. Thus, this factor therefore weighs in favor of Plaintiff.

### (3) Active Resistance or Attempt to Evade Arrest

Third, the Court considers whether a suspect is actively resisting arrest or attempting to evade arrest by flight. It is undisputed that Plaintiff was not evading or resisting arrest at the time Defendant Alexander approached Plaintiff's vehicle. Thus, this factor weighs in favor of Plaintiff.

### c. Other Factors

The Court must also consider whether alternative methods were available for subduing Plaintiff. *See Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994). Police officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Glenn v. Wash. Cty.*, 673 F.3d 864, 876 (9th Cir. 2011) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). But "police are 'required to consider [w]hat other tactics if any were available,'" and if there were "clear, reasonable and less intrusive alternatives" to the force employed, that "militate against finding [the] use of force reasonable." *Id.* (quoting *Bryan*, 630 F.3d at 831 (citation and quotation omitted)).

Here, other tactics were available. For instance, Defendant Alexander could have knocked on the vehicle's window and asked to speak to Plaintiff to determine what he was doing in the parking lot. Thus, this factor weighs in favor of Plaintiff.

### d. Necessity of Force

Finally, the Court must balance the force used against the need for such force to determine whether the force used was "greater than reasonable under the circumstances." *Espinosa*, 598 F.3d at 537 (quoting *Santos*, 287 F.3d at 854). This determination is judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396–97. Where there is no need for force, any forced used is excessive. *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), *vacated and remanded on other*

*grounds*, *County of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001).

Viewing the facts in the light most favorable to Plaintiff, the force used was greater than reasonable under the circumstances. First, and as discussed above, Defendants did not have reason to believe Plaintiff was armed when Defendant Alexander approached Plaintiff's vehicle. Second, although Plaintiff was not resisting, Defendant Alexander forcefully removed him from the vehicle.

Whether Defendant Alexander used excessive force turns on whether he pointed a weapon at Plaintiff and whether he physically touched Plaintiff. The Court therefore finds that there are genuine disputes of material fact regarding whether the force used was objectively reasonable. The Court cannot resolve this key factual dispute without assessing the parties' respective credibility, which the Court may not do in deciding a motion for summary judgment. *Liberty Lobby*, *Inc.*, 477 U.S. at 249; *cf. City of Hemet*, 394 F.3d at 701 (noting that excessive force cases often turn on credibility determinations, and the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom") (quotation omitted). Thus, the Court will consider whether Defendants are entitled to qualified immunity, even if excessive force was used.

### 2. **Qualified Immunity**

As noted above, Defendants are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Court must not define clearly established law "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742) (emphasis added). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau*, 543 U.S. at 198).

In *Mullenix*, the Supreme Court recognized that "specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes

difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" 577 U.S. at 12.  As Defendants point out (Doc. 27 at 12), the Supreme Court has also observed that "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 12.)

Here, taking the facts in the light most favorable to Plaintiff, Defendant Alexander used excessive force by pointing a gun at Plaintiff and forcefully removing Plaintiff from his vehicle.  But again, the Court cannot resolve the key factual dispute in this case—whether Defendants used *any* force at all against Plaintiff, let alone unreasonable force—on a motion for summary judgment.  The Court will therefore deny Defendants' Motion as to Plaintiff's Fourth Amendment excessive force claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 27).

(2) Defendants' Motion for Summary Judgment (Doc. 27) is **granted** in part and **denied** in part as discussed above.

(3) This action is referred to Magistrate Judge Bibles to conduct a settlement conference.

(4) Defendants' Counsel shall arrange for the relevant Parties to jointly call Magistrate Judge Bibles' chambers at (928) 774-2566 within 14 days to schedule a date for the settlement conference.

Dated this 15th day of September, 2021.

Honorable Susan M. Brnovich
United States District Judge